Filed 4/2/25  P. v. Valdez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082113 |
| v. | (Super.Ct.No. INF2000827) |
| JOSE TORRES VALDEZ, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Steven G. Counelis, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Paige B. Hazard and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Jose Angel Torres Valdez, Jr., kidnapped three women, drove them to the desert where he ordered them to get down on their knees, threatened to kill them while touching a firearm tucked into his waistband, and later threatened them with future harm if they reported the crimes to the police. A jury convicted him of multiple counts of making criminal threats, kidnapping, and dissuading a witness, and it found true sentencing allegations that he personally used a firearm during the commission of each offense.

On appeal, defendant argues: (1) there was insufficient evidence he used an actual firearm to support the jury's true findings on the firearm use sentence enhancements; (2) the trial court abused its discretion when it denied his request to instruct the jury it could consider his voluntary intoxication when it decided whether he formed the specific intents for making criminal threats and for dissuading a witness; (3) the trial court abused its discretion when it denied his request to strike his firearm use enhancements, pursuant to Penal Code section 1385[1]; (4) the trial court was required to stay the sentences for his convictions for dissuading a witness and for the firearm sentence enhancements attached to those counts, pursuant to section 654; and (5) the trial court ignored and failed to give serious consideration to mitigating factors when it sentenced him to consecutive state prison terms instead of concurrent ones.

We find no error, and affirm the judgment.

---

[1] All undesignated statutory references are to the Penal Code.

2

## I.

## FACTS AND PROCEDURAL BACKGROUND

Starr was acquainted with defendant from an old job and the two hung out at least once. On September 26, 2019, at approximately 3:00 a.m., Starr and her friends Emma and Chayah were hanging out with defendant and his friend or cousin, Mario, at an apartment in Bermuda Dunes. At some point, Starr saw a gun in defendant's truck. Defendant told her he was "not gonna do anything with it." Later, defendant told Chayah that Starr was upset because he had a gun in the truck. He also told Chayah he was not going to use the gun. The young women shared a six-pack of Smirnoff drinks at the apartment, and, eventually, the group all left in defendant's truck to go and buy more alcohol. Defendant drove.

Chayah and Mario were joking around with each other during the drive, and defendant got upset and told Chayah to stop talking to his cousin like that. Defendant and Chayah began to argue and were "kind of going at it." He told the women they "need[ed] some discipline" and began driving toward the desert instead of the store as originally planned. The women asked defendant to slow down to no avail. They also asked to be let out of the truck, but defendant would not stop.

Emma was scared because she did not know what was going to happen and they were "in the desert in the middle of nowhere." Defendant pulled over to the side of the road and told the women to get out of the truck and to get down on their knees. The women walked behind the truck and complied because they were scared and believed

3

they had no other choice. Chayah saw defendant get a gun from the truck. Chayah testified she was "sort of" familiar with firearms, and she was 99.9 percent sure the object defendant retrieved was a gun because of the way he was "gripping it," the way he placed it in his waistband, from its shape, and from the fact it had a "circle" in the front that was surrounded by silver. Emma testified that, based on her past experiences and from defendant's movements and gestures, she believed there was a silver handgun "poking out of" his waistband. Although Starr had never seen a handgun in person, she had seen them in photographs and in the movies and she believed defendant had a gun tucked into his pants because the object "looked metal."

Defendant told the women to give him their phones "or else he was going to hurt" them. He took Chayah's and Starr's phones. Emma put her phone "down her pants" and defendant did not take it. She then used her phone to share her location with a friend, and she tried to call 911 but the call did not go through. While the women were on their knees, defendant said he was going to kill them. Defendant was touching the gun in his waistband when he said he was going to kill them. He also said he had killed other women. All three women thought they were going to die, and they begged defendant not to kill them. Defendant eventually told the women to get up, and they got up and sat down in the bed of the truck.

Defendant later said they were going to leave, and everyone got inside the truck. But the truck got stuck in the dirt, and defendant got angry and once more told the women to get out of the truck and to get down on their knees. A tow truck happened to

4

be approaching them on the road and they all flagged it down. As the truck pulled over and the women began to run toward it, defendant ran after them and said, "You guys better not say nothing dumb." The women wanted to tell the tow truck driver they needed help, but they were afraid because defendant was there with them. The tow truck driver got defendant's truck out of the dirt, and defendant drove back toward Indio and left the women near Emma's house. Defendant told the women they "better not call the cops on him." Chayah took a picture of the truck's license plate as defendant drove away and the women called the police. Police later searched defendant's home and truck but could not find a gun.

A jury found defendant guilty of three counts of making criminal threats (§ 422, counts 1-3), three counts of preventing or dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), counts 4-6), and three counts of kidnapping (§ 207, subd. (a), counts 7-9). The jury also found that during the commission of counts 1 through 6, defendant personally used a firearm within the meaning of section 12022.5, subdivision (a), and that during the commission of counts 7 through 9, defendant personally used a firearm within the meaning of section 12022.53, subdivision (b).

In a bifurcated proceeding, the trial court found true the allegation defendant had suffered a prior strike conviction, but the court granted defendant's request to dismiss it. The court also found beyond a reasonable doubt that several aggravating factors applied. The trial court sentenced defendant to state prison for the middle term of five years on count 7, and a consecutive 10-year term for the firearm enhancement attached to that

5

count (§ 12022.53, subd. (b)); a consecutive five-year middle term on count 8 plus a consecutive 10-year term for the firearm enhancement attached to that count (§ 12022.53, subd. (b)); a consecutive five-year middle term for count 9, plus a consecutive 10-year term for the firearm enhancement attached that count (§ 12022.53, subd. (b)); and consecutive three-year terms for the convictions on counts 4, 5, and 6, for an aggregate term of 54 years in state prison. The court imposed but stayed, pursuant to section 654, the punishment on counts 1, 2, and 3, and ordered that the punishment for the enhancements attached to those counts be stricken. The court dismissed the three-year terms for the section 12022.5, subdivision (a), firearm enhancements attached to counts 4, 5, and 6.

In addition, the trial court imposed a consecutive 16-month term on a separate case (case No. INF2000808), resulting in a total state prison sentence of 55 years four months.

Defendant timely appealed.

## II.

## DISCUSSION

A. *Substantial Evidence Supports The Jury's True Findings That Defendant Personally Used A Firearm.*

Defendant argues the record does not contain substantial evidence to support the jury's findings that he personally used a firearm during the commission of his offenses. We conclude otherwise.

6

"'In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."'" (*People v. Renteria* (2022) 13 Cal.5th 951, 970.)

"'Even where, as here, the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ""'be reasonably reconciled with the defendant's innocence.'"'" (*People v. Veamatahau* (2020) 9 Cal.5th 16, 36.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient proof of any fact. (Evid. Code, § 411; *People v. Avila* (2009) 46 Cal.4th 680, 703; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) "'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

The sentence enhancements found in section 12022.5, subdivision (a), and section 12022.53, subdivision (b), apply to persons who personally use a "firearm" during the commission of certain felonies. Section 12022.53, subdivision (b), provides, "The firearm need not be operable or loaded for this enhancement to apply." As the trial court properly instructed the jury (see CALCRIM No. 3146), a "'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion."[2] (§ 16520, subd. (a); see § 12001 [applying definition of "firearm" to sentence enhancements].) "'[T]oy guns obviously do not qualify as a "firearm," nor do pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile.'" (*People v. Law* (2011) 195 Cal.App.4th 976, 983 (*Law*), quoting *People v. Monjaras* (2008) 164 Cal.App.4th 1432,1435 (*Monjaras*); accord, *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001 ["A BB gun or pellet gun is not a 'firearm' for purposes of sentence enhancements"], citing *People v. Vasquez* (1992) 7 Cal.App.4th 763, 768.)

"'[W]hen as here a defendant commits [an offense] by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a

---

[2] An "'imitation firearm'" is defined as "any BB device, toy gun, replica of a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm." (§ 16700, subd. (a)(1).)

firearm within the meaning of section 12022.53, subdivision (b).' (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1437.) Circumstantial evidence that establishes a defendant's personal use of a gun within the meaning of section 12022.53, subdivision (b), also suffices for personal use of a firearm for purposes of assault with a firearm [citation] and the personal use enhancement of section 12022.5, subdivision (a)." (*Law*, *supra*, 195 Cal.App.4th at p. 983.)

"Most often, circumstantial evidence alone is used to prove the object was a firearm. This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation. And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers." (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)

Defendant argues the evidence did not support the jury's true findings that he personally used an actual firearm, because neither Starr nor Emma testified they actually saw the gun, and Chayah's description of what she saw was equally consistent with a BB gun. But, as indicated, *ante*, all three women testified defendant held or gripped an object in his waistband in a manner consistent with holding a firearm; Chayah testified that, based on her familiarity with firearms, she was almost 100 percent certain it was a gun from the way defendant held it and from its shape and other characteristics; and

9

defendant admitted to Chayah that he had a gun in his truck when he told her Starr was upset because she had seen the gun. And all three women were in fear for their lives when defendant—as he touched the object in his waistband—said he would kill them and that he had killed before.

"The jury was not required to give defendant the benefit of the victim's inability to say conclusively the [object] was a real firearm. This is so because 'defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a [firearm].'" (*Monjaras*, *supra*, 164 Cal.App.4th at pp. 1436-1437.) "As the old saying goes, 'if it looks like a duck, and quacks like a duck, it's a duck.'" (*Id*. at p. 1437.) The object defendant took from his truck and tucked into his waistband "looked like a firearm, and it in effect communicated that it was a firearm" when he idly touched it and told the women—as they were on their knees—that he was going to kill them. (*Ibid*.) "While it is conceivable that the [object] was a toy, the jury was entitled to take defendant at his word, so to speak, and infer from his conduct that the [object] was a real, loaded firearm," and that he was prepared to follow through with his threats. (*Ibid*.)

B. *Defendant Was Not Entitled to an Instruction on Voluntary Intoxication*.

Defendant argues the trial court abused its discretion when it denied his request that the jury be instructed on voluntary intoxication for counts 1 through 6. The trial court denied the request because there was no testimony about how many alcoholic

10

drinks defendant had consumed, how much cocaine he had ingested, or about the "degree" to which he had become intoxicated. We find no error.

"It is well settled that '[a]n instruction on the significance of voluntary intoxication is a "pinpoint" instruction that the trial court is not required to give unless requested by the defendant.'" (*People v. Verdugo* (2010) 50 Cal.4th 263, 295.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.'" (*People v. Salas* (2006) 37 Cal.4th 967, 982.) "We review a trial court's refusal to give a requested instruction de novo." (*People v. Quarles* (2018) 25 Cal.App.5th 631, 634, citing *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Evidence of voluntary intoxication is not admissible to show or negate *capacity* to form a particular intent. (§§ 25, subd. (a), 29.4, subd. (a).) "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent." (§ 29.4, subd. (b); see *People v. Horton* (1995) 11 Cal.4th 1068, 1119 ["[E]vidence of voluntary intoxication is relevant to the extent it bears upon the question whether the defendant *actually* had the requisite specific mental state required for commission of the crimes at issue."].) There is no dispute here that defendant's offenses of making a terrorist threat (§ 422) and of dissuading a witness (§ 136.1, subd. (b)(1)) are specific intent crimes, and that, theoretically, a jury could be instructed it could find voluntary intoxication prevented defendant from forming a

11

specific intent. (See, e.g., *People v. Felix* (2001) 92 Cal.App.4th 905, 911 ["Section 422 . . . requires that the threatening statement be made with the specific intent to be taken as a threat."]; *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347 ["'[S]ection 136.1 is a specific intent crime.'"].)  The question here is whether there was substantial evidence to support giving such an instruction.

"The mere fact that a defendant may have been drinking [or using drugs] prior to the commission of a crime does not establish intoxication or require the giving of a requested instruction thereon."  (*People v. Miller* (1962) 57 Cal.2d 821, 830-831.)  A defendant is entitled to an instruction on involuntary intoxication "only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.'"  (*People v. Williams* (1997) 16 Cal.4th 635, 677.)  In other words, "an intoxication instruction is not required when the evidence shows that a defendant ingested drugs or was drinking, unless the evidence *also* shows he became intoxicated to the point he failed to form the requisite intent or attain the requisite mental state."  (*People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661.)

At most, the evidence adduced at trial was that defendant and Mario had been "doing cocaine" and they and the three women were drinking alcohol.  The group then decided to go out and buy some more alcohol.  No witness testified to how many alcoholic drinks defendant had consumed or for how long he had been drinking.

Likewise, no witness testified to how much cocaine defendant ingested. Most importantly, no witness testified that defendant looked or acted like he was intoxicated.

As indicated, *ante*, the testimony was that defendant drove the group in his truck to get more alcohol, but that he became upset when Mario and Chayah started joking around. He then told the women they needed to be taught some discipline and drove out toward the desert. Although defendant was driving fast, no evidence was introduced to show his driving was erratic or unsafe. Defendant then stopped and ordered the women to get out of the truck and down on their knees, threatened to kill them, and, when a tow truck happened to come by, he told the women not to say anything. And, when he later dropped off the women, he told them not to call the police. These acts, by themselves, do not necessarily demonstrate intoxication sufficient to prevent him from forming a specific intent. (See *People v. Spencer* (1963) 60 Cal.2d 64, 89 ["These are not the actions of a man too drunk to form a specific intent to rob."].)

Moreover, even if the mere act of ingesting cocaine and consuming alcohol were sufficient to show defendant was *to some degree intoxicated*, it was not sufficient to warrant an inference that he was too intoxicated to form a specific intent. In *Williams*, the California Supreme Court held that even if a few isolated references in the record to a defendant being "'spaced out,'" "'doped up,'" and "'smokin' pretty tough,'" qualified as evidence the defendant was intoxicated at the time of the crime, the trial court properly denied a request for a voluntary intoxication instruction because "there was no evidence at all that voluntary intoxication *had any effect on [the] defendant's ability to formulate*

13

*intent*." (*People v. Williams*, *supra*, 16 Cal.4th at pp. 677-678, italics added; accord, *People v. Serrano* (2022) 77 Cal.App.5th 902, 918 ["Here, the evidence of defendant's voluntary intoxication was scant, but assuming it amounted to substantial evidence, there was still no evidence defendant was unable to form the specific intent required for a finding of malice."] fn. omitted.)

> C. *The Trial Court Properly Declined To Strike The Punishment For Defendant's Firearm Enhancements Pursuant to Section 1385.*

Defendant argues the trial court failed to consider certain mitigating circumstances when it denied his request to dismiss his firearm enhancements. He contends that, if we affirm the true findings on those enhancements (as we do, *post*), we must remand for the trial court to dismiss them. The trial court found defendant's prior criminal history meant dismissing the enhancements would endanger public safety. We find no abuse of discretion.

We review for abuse of discretion the denial of a motion to dismiss a firearm sentence enhancement under section 1385. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490; *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on

14

review.'" [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

The trial court here had express authority under section 1385 to strike or dismiss defendant's firearm enhancements. (§§ 12022.5, subd. (c), 12022.53, subd. (h).) When a court has the discretion to dismiss or strike an enhancement, it may elect instead to strike the additional punishment for the enhancement in the furtherance of justice. (§ 1385, subd. (b).) Section 1385, subdivision (c)(1), provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) provides, in turn, that when exercising its discretion to strike a sentence enhancement, the trial court must consider and give great weight to evidence of the presence of nine mitigating circumstances. (§ 1385, subd. (c)(2)(A)-(I).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2), italics added.)

15

Recently, the California Supreme Court held section 1385, subdivision (c)(2), does not establish a presumption that "an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' (§ 1385, subd. (c)(1)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id*., subd. (c)(2)).  Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.'"  (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.) Relevant here, the court observed, "in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)."  (*Walker*, at p. 1033, quoting *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297, fn. 6.)

To repeat, the trial court expressly ruled dismissal of defendant's firearm enhancements would, in fact, endanger public safety.  Defendant does not contend the record does not support the trial court's finding or otherwise convince us that the trial court abused its discretion.

D.     *Section 654 Did Not Require The Trial Court to Stay The Sentences For Defendant's Convictions For Dissuading A Witness And The Sentence Enhancements Attached To Those Offenses.*

Defendant contends the trial court erred by not staying, pursuant to section 654, the sentences on his convictions for dissuading a witness on counts 4 through 6 and staying the punishment for the firearm attachments attached to those counts.[3] He argues the kidnappings and witness dissuading were part of one continuous course of conduct. We disagree.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." "It is well settled that section 654 protects against multiple punishment, not multiple conviction. [Citation.] The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of

_____

[3] In his briefs, defendant somewhat vaguely refers to "the firearm enhancements," without specifying which ones his argument applies to. The People assume defendant's argument applies to the enhancements attached to counts 7 through 9. However, it is clear defendant argues section 654 applies to the enhancements pursuant to section 12022.5, subdivision (a), for counts 4 through 6. Therefore, we need not address the People's contention that section 654 does not apply as a matter of law to the enhancements under section 12022.53.

conduct deemed to be indivisible in time.'" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"""'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'"'" (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*People v. Harrison*, *supra*, 48 Cal.3d at p. 335.) "'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]'" (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

When sentencing defendant, the trial court agreed with the People that defendant's criminal threats were made during the kidnapping and, therefore, section 654 applied to the sentences on counts 1 through 3 and to the sentence enhancements for those counts. However, although the acts of dissuading the women from reporting the crimes "occurred during the same general timeframe" as the kidnappings and threats, the court ruled the

18

intent behind dissuading the women was "very different from the intent behind kidnapping and making the threats." Whereas the object of the kidnappings and threats was to instill fear and gain some psychological satisfaction, the court ruled the object of dissuading the women "was to avoid detection and conviction for his crimes by threatening the victims with future harm."

Here, circumstantial evidence supports the trial court's findings. Defendant became angry with Chayah for joking around with Mario, argued with her, then said the women needed to learn some discipline. He proceeded to drive out to the desert, instead of going to buy more alcohol as planned, then ordered the women to get out of the truck and get down on their knees. Defendant then threatened to kill them while touching the firearm he had taken from the truck and tucked into his waistband. At that point, the kidnapping and criminal threats were completed crimes. Defendant did not seek to dissuade the women from reporting those crimes until sometime later, when the tow truck appeared and when defendant dropped them off. More to the point, the object or purpose behind the earlier crimes, to the extent they are ascertainable (to "discipline" the women, scare them, etc.), were dissimilar to the obvious object of the act of dissuading the women—to prevent them from reporting the kidnappings/threats, and to avoid being arrested and potentially convicted for those crimes.

*People v. Louie* (2012) 203 Cal.App.4th 388, on which defendant relies, is easily distinguishable. There, the defendant came to the back gate of the victim of an arson that occurred two weeks prior, "pointed a gun at her, called her a 'cop-calling bitch,' and said

she was going to get hers, just like the night of the fire." (*Id.* at p. 394.) For that discrete incident, the defendant was convicted of threatening the victim and of dissuading her from reporting the crime. (*Id.* at p. 399.) The appellate court ruled section 654 prohibited punishing the defendant for both offenses. "This was a single criminal act and . . . a single criminal act may result in only one punishment, even if the defendant harbored multiple objectives. The threat was merely the method employed to attain the objective of dissuading the witness." (*Louie*, at p. 399.)

Unlike in *Louie*, the kidnappings and threats were not how defendant sought to dissuade the women from reporting the crimes, or vice versa. To repeat, those crimes were, effectively, completed and defendant threatened the women with future harm to ensure their silence. We find no error.

E.     *The Trial Court Properly Exercised Its Sentencing Discretion When It Imposed Consecutive Terms.*

Last, defendant argues the trial court ignored mitigating factors that "required concurrent rather than consecutive sentences," and which resulted in a "grossly disproportionate sentence." According to defendant, he was entitled to "serious consideration" by the sentencing court of those mitigating factors, and his sentence deviated "from the 'norm' of imposition of concurrent sentences." Once more, we are unpersuaded.

Contrary to defendant's assertion, concurrent sentencing is not necessarily the "norm" or the presumed sentencing choice. "'Section 669 grants the trial court broad

discretion to impose consecutive sentences when a person is convicted of two or more crimes.'" (*People v. Leon* (2010) 181 Cal.App.4th 452, 467.)  Section 669 "does not establish a presumption in favor of concurrent sentences; its requirement that concurrent sentences be imposed if the court does not specify how the terms must run merely provides for a default in the event the court fails to exercise its discretion." (*People v. Black* (2007) 41 Cal.4th 799, 822, superseded by statute on other grounds as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 756-758.)

Nor do we agree with defendant that the record shows the trial court ignored sentencing factors that might have supported concurrent sentences.  "In deciding whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists.  (See § 669; Cal. Rules of Court, rule 4.425(a), (b).)  Factual findings are not required." (*People v. Black*, *supra*, 41 Cal.4th at p. 822.)  And, unlike when the trial court imposes an upper term, the court need not state on the record the "facts and reasons" for selecting consecutive terms—it need only state its "reasons" and refer to the *primary* factors that support a consecutive term.  (*Ibid*.; § 1170, subd. (c); Cal. Rules of Court, rule 4.406(a), (b).)  A single factor will support the trial court's decision to impose a consecutive term.  (*People v. Osband* (1996) 13 Cal.4th 622, 728-729.)

"'[I]n the absence of a clear showing that its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing

21

objectives and, accordingly, its discretionary determination to impose consecutive sentences ought not be set aside on review.' . . . . 'If it has faithfully applied the sentencing rules, the only other question is whether, all circumstances considered, the trial court's decision exceeds the bounds of reason.'" (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 874, superseded by statute on other grounds as stated in *People v. Cota* (2023) 97 Cal.App.5th 318, 334.)

"In making its decision, a trial court should consider, in part: 'Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.' (Cal. Rules of Court, rule 4.425(a).)" (*People v. Reneaux*, *supra*, 50 Cal.App.5th at p. 874.) The court may also consider any aggravating or mitigating factors "in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and [¶] (3) A fact that is an element of the crime." (Cal. Rules of Court, rule 4.425(b); see *id*., rules 4.421, 4.423.)

Here, the record amply demonstrates the trial court did, in fact, consider all relevant factors bearing on whether to impose concurrent or consecutive sentences. In its written order explaining its sentencing choices, the trial court expressly recognized it had

discretion whether to impose consecutive or concurrent sentences. The court set forth the factors enumerated in California Rules of Court, rule 4.425(a), stated it could rely on mitigating or aggravating circumstances, and noted the limitations set forth in rule 4.425(b) on its ability to rely on aggravating circumstances.

The court then analyzed the factors from California Rule of Court, rule 4.425(a)(1)-(3). "Applying the factors related to the crime, the objectives of the kidnappings/threats and the dissuading were predominately independent of each other, specifically instilling fear and preventing disclosure of the crime, respectively. The objectives were also independent as to each victim, as the intent was to instill fear in each individual victim. The crimes also involved separate acts or threats of violence. With respect to the kidnapping/threats and dissuading, the former involved instilling fear by the threat of violence during the period of the crime and the latter involved instilling fear by the threat of violence that would continue after the crime had ended in order to prevent the crime from being reported. The crimes also involved separate threats of violence to the individual victims. Finally, the crimes were not committed at different times or separate places."

Last, the court stated it had considered mitigating and aggravating factors. "The court also considers aggravating and mitigating factors, as well, unless the fact is used to impose the upper term, to otherwise enhance the sentence, or is an element of the crime. Because the . . . first two factors were not used to impose the upper term, those factors strongly support running the sentences consecutively. [¶] Based on the facts of the case,

23

given that the charges involve separate victims, it is appropriate to impose the charges consecutively to afford justice to each victim."**4**

That the trial court did not expressly articulate the presence or absence of any mitigating factors, or give reasons for rejecting mitigating factors, is of no moment. "The trial court is not required to set forth its reasons for rejecting a mitigating factor. [Citations.] Further, unless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, *including any mitigating factors*." (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317-1318, italics added; accord, *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1102 ["'The court is presumed to have considered all relevant factors unless the record affirmatively shows the contrary.'"]; Cal. Rules of Court, rule 4.409.) On this record, we simply cannot agree with defendant that the trial court simply ignored or failed to give serious consideration to any mitigating factors.**5**

---

**4** The trial court did not expressly cite the aggravating factors relating to the crimes set forth in California Rules of Court, rule 4.421(a). But its reference to "the first two factors" and the fact they were not used to impose an upper term strongly indicates the court relied on the aggravating factors set forth in rule 4.421(a)(1), (2), to wit, "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness," and "[t]he defendant was armed with or used a weapon at the time of the commission of the crime . . . ."

**5** In addition, defendant contends the trial court "ignored the fact that the evidence in support of the firearm enhancement[s] was at best inconclusive, and that a specific mitigating factor, i.e., that there was no evidence to indicate the alleged firearm was loaded or operable, applied." (See Cal. Rules of Court, rule 4.423(a)(10) ["If a firearm was used in the commission of the offense, it was unloaded or inoperable"].) As we have already explained, *ante*, the circumstantial evidence in the record about the firearm was, in fact, substantial evidence and supported the jury's true findings on the firearm

*[footnote continued on next page]*

## III.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.

---

enhancement allegations.  Therefore, the trial court's implicit rejection of that mitigating factor was amply justified.